IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ZANE ARP | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 25-2668 |
| BELL INTERNATIONAL LABORATORIES, INC., | : | |
| | : | |

### MEMORANDUM

**Perez, J.**                                                                                                              November 4, 2025

      Defendant Bell International Laboratories, Inc. ("Bell Laboratories") moves to dismiss for lack of personal jurisdiction or, in the alternative, to transfer this case to the United States District Court for the District of Minnesota. Plaintiff Zane Arp, a former executive employee of Bell Laboratories, brings this employment-related action asserting claims for breach of contract, fraudulent inducement, and retaliation in violation of the Minnesota Whistleblower Act, Minn. Stat. § 181.932, arising out of the termination of his employment following his internal reports of compliance issues. Plaintiff opposes the motion. Defendant argues that its contacts with Pennsylvania—limited product shipments amounting to roughly one percent of its sales, no property, employees, or taxes in the state—are insufficient for general jurisdiction, and that specific jurisdiction does not exist over all claims, particularly the Minnesota Whistleblower claim. Alternatively, Bell Labs requests transfer to the District of Minnesota on convenience and fairness grounds. For the reasons below, the Court concludes that it has personal jurisdiction over Bell Laboratories but, in its discretion, transfers the case to Minnesota pursuant to 28 U.S.C. § 1404(a).

      **I.**      **BACKGROUND OF CASE**

      Plaintiff, Dr. Zane Arp ("Dr. Arp"), is a citizen and resident of Spring City, Pennsylvania. ECF No. 1 at ¶11. Defendant Bell Laboratories is a corporation with its headquarters and principal

place of business in Eagan, Minnesota. ECF No. 1 at ¶12. The company employs more than 200 employees in Minnesota. ECF No. 1 at ¶13. Defendant does not maintain any offices, facilities, or employees in Pennsylvania. ECF No. 6 at 3 (citing Plies Cert at ¶ 5). It annually ships goods valued under $815,000 to nine addresses in Pennsylvania. *Id.* (citing Pleis Cert. at ¶ 9). These shipping addresses are for companies invoiced in other states. *Id.* (citing Pleis Cert. at ¶ 8). Following recommendation from Bell Laboratories CEO, Mohammed Saremi ("Mr. Saremi"), Plaintiff applied for the Chief Compliance Officer (CCO) position. ECF No. 1 at ¶¶25-26. All interviews and communications surrounding employment were conducted remotely except for one on-site visit. See *Id.* at ¶¶26-33; ECF No. 6 at 4. Plaintiff signed the offer letter in Pennsylvania on July 22, 2024. ECF No. 1 at ¶¶20, 32. He began his employment on September 3, 2024. *Id.* at ¶37. Throughout the course of his employment, Plaintiff was in the office 12-16 hours a day except on Fridays when he flew back to Pennsylvania. *Id.* at ¶146.

Upon commencement of his employment, Plaintiff became aware of significant issues involving quality and compliance across the production process, including lack of testing materials and inadequate training of employees. *Id.* at ¶75; ¶¶78-79. At his second in-person meeting with Mr. Saremi around October 10, 2024, Plaintiff raised concerns relating to these issues. *Id.* at ¶¶151, 159. Plaintiff was unexpectedly terminated in Minnesota around October 22, 2024. *Id.* at ¶173; ECF No. 6 at 5. Plaintiff filed a complaint against Defendant Bell Laboratories on May 23, 2025. Plaintiff's preference for venue is the Eastern District of Pennsylvania. ECF No. 1 at ¶9. On July 29, 2025, Defendant filed a motion to dismiss for lack of personal jurisdiction. None of the Defendant's relevant witnesses, documents, or facilities are in Pennsylvania. ECF No. 6 at 5. Plaintiff filed a response on August 12, 2025. Following a deadline extension, Defendant filed its reply brief on August 25, 2025. The motion is now ripe for disposition.

2

## II.   PERSONAL JURISDICTION

A federal court sitting in diversity may exercise personal jurisdiction to the extent authorized by state law and consistent with due process. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316–17 (3d Cir. 2007). Personal jurisdiction may be exercised under two distinct theories, a defendant's general or claim-specific contacts with the forum. General jurisdiction is based upon the defendant's "continuous and systematic" contacts with the forum and exists even if the plaintiff's cause of action arises from the defendant's non-forum related activities. *See Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co.,* 75 F.3d 147, 151 n. 3 (3d Cir.1996) (citations omitted). In contrast, specific jurisdiction is present only if the plaintiff's cause of action arises out of a defendant's forum-related activities, such that the defendant " 'should reasonably anticipate being haled into court' " in that forum. *Id.* at 151 (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286 (1980)).

### A.  General Jurisdiction

Pennsylvania's long-arm statute extends jurisdiction to the fullest extent permitted by the United States Constitution. 42 Pa. Cons. Stat. § 5322(b). Accordingly, the Court considers whether Bell Laboratories' contacts with Pennsylvania are so "continuous and systematic as to render it essentially at home" in the state. *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Defendant is incorporated and headquartered in Minnesota and has no offices, employees, bank accounts, or property in Pennsylvania. It pays no taxes here and does not maintain an agent for service of process. Its only consistent forum contact consists of product shipments to Pennsylvania customers totaling roughly one percent of its annual sales revenue. Such limited shipments do not constitute the type of "continuous and systematic" affiliations that approximate physical presence in the state. Although

the Third Circuit has found the percentage of business conducted in the forum state is not necessarily dispositive, low revenue rates often fail to form an essential part of a defendant's business such that continuous and systematic contacts are established. *Ciolli v. Iravani*, 651 F.Supp.2d 356, 364 (citing *Provident Nat'l Bank*, 819 F.2d at 437-438). *See also Brown v. AST Sports Sci., Inc.*, No. 02–1682, 2002 WL 32345935, at *6, 8 (E.D.Pa. June 28, 2002) (finding that contacts including 958 direct internet sales in one year to Pennsylvania citizens amounting to 3.7% of the annual total orders was insufficient for general jurisdiction). Because Defendant's forum activity is minimal and peripheral to its overall operations, it could not reasonably anticipate being haled into a Pennsylvania court on any claim. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). General jurisdiction is therefore lacking.

### B. Specific Jurisdiction

Alternatively, if the Court lacks general jurisdiction, it has specific jurisdiction. Specific jurisdiction requires that (1) the defendant purposefully directed activities at the forum, (2) the litigation arises out of or relates to those activities, and (3) jurisdiction comports with fair play and substantial justice. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–76 (1985); *Merced v. Gemstar Grp., Inc.*, No. CIV.A. 10-3054, 2015 WL 1182860, at *2 (E.D. Pa. Mar. 13, 2015).

Defendant purposefully directed employment-related activities toward Pennsylvania when it recruited and contracted with Plaintiff while he lived here. The communications leading to his hiring and the acceptance of his offer in Pennsylvania constitute deliberate engagement with the forum. The alleged misrepresentations and reliance giving rise to Arp's contract and fraud claims flow from those contacts. Thus, the first two elements are satisfied for those claims.

Under § 5322(a)(2), personal jurisdiction is proper where a defendant contracts to supply services or goods in Pennsylvania. Defendant admits to selling products worth over $800,000 to

4

Pennsylvania customers, satisfying § 5322(a)(1)(ii). Even a single shipment suffices to establish jurisdiction under Pennsylvania's long-arm statute. *See Merced v. Gemstar Grp., Inc.*, No. 10-3054, 2015 WL 1182860, at *4 (E.D. Pa. Mar. 13, 2015).

Although Defendant contends the Minnesota Whistleblower Act claim lacks a Pennsylvania nexus, the Court need not compartmentalize jurisdiction claim by claim when at least one arises from deliberate forum contacts and the others form part of the same employment relationship. Exercising jurisdiction over Defendant as to the entire controversy does not offend due process, especially given that it intentionally recruited a Pennsylvania resident into an ongoing employment relationship. Accordingly, the Court holds that specific jurisdiction exists.

### III. Transfer of Venue to the District of Minnesota

Pursuant to 28 U.S.C. 1404(a), a court may transfer venue to another district if "the case could have been brought in the proposed transferee forum, and proposed transfer will be more convenient for the parties and witnesses and in the interest of justice." 28 U.S.C. §1404(a). Even if venue is proper in the forum where the case was initially brought, a court may exercise discretion in granting a venue transfer so long as the proposed district also satisfies the requirements for proper venue. See *Shutte v. Armco Steel Corp.*, 431 F.2d, 24–25 (3rd. Cir. 1970). Here, venue is proper under U.S.C. §1391(b)(1) because Defendant resides in the District of Minnesota. *28 U.S.C. §1391(b)(1)*. Residency is satisfied pursuant to U.S.C §1391(c)(2) because Defendant's corporate headquarters and principal place of business are in Eagan, Minnesota, thus establishing personal jurisdiction in the district. ECF No. 1 at ¶12; See *Daimler AG v. Bauman*, 571 U.S. at 137 (2014).

The Third Circuit incorporated the three primary factors for transfer under §1404(a) and outlined a series of private and public interests relevant in determining a venue transfer. See *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3rd Cir. 1995). Private interests include: "(1)

plaintiff's forum preference; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) convenience of the parties as indicated by their relative physical and financial condition; (5) convenience of the witnesses, but only to the extent that witnesses may be unavailable to testify in one forum; and (6) location of books and records, limited to the extent they cannot be produced at alternative forum." *Id.* at 879-80. Public interests include: "(1) enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) relative administrative difficulty related to court congestion; (4) local interest in deciding local controversies; (5) public policies of both forums; and (6) familiarity of trial judge with applicable state law in diversity case." *Id.*

In this case, the *Jumara* factors weigh in favor of transfer.

### A. Plaintiff's Choice of Forum

In general, Plaintiff's choice of forum is given great deference in venue transfer determinations. See *Shutte*, 431 F.2d at 25; See *Bennett v. Itochu Intern., Inc.*, No. 09-1819, 2009 WL 2569259, at *3 (E.D. Pa. 2009). This choice of forum is not to be lightly disturbed and the burden of establishing the need for a transfer rests with Defendant. See *Jumara,* 55 F.3d at 879. Plaintiff's choice of forum is the Eastern District of Pennsylvania. ECF No. 1 at ¶11. This selection should not be disturbed "unless the balance is strongly tipped in favor of the defendant." *Park Inn Int'l, L.L.C. v. Mody Enterprises, Inc.*, 105 F.Supp.2d 370, 377 (D.N.J. 2000) (quoting *Gulf Oil v. Gilbert*, 330 U.S. 501, 508 (1947)). On its own, Plaintiff's choice of forum weighs modestly against transfer.

### B. Location Where the Claims Arose

Aside from a plaintiff's choice of forum, the location of where claims arose is the "most significant private interest factor" to be considered in a venue transfer request. See *Connors v. R&S*

*Parts & Services, Inc.* 248 F.Supp.2d 394, 396 (E.D. Pa. 2003). In cases involving events in multiple forums, courts identify the jurisdiction that represents the "center of gravity of the dispute." *Park Inn Int'l*, 105 F. Supp. 2d at 377.

When determining a breach of contract claim, courts "generally look to the place of performance of a contract." *Acumen re Management*, 2009 WL 10737648 at *3 (E.D. Pa. 2009) (citing *Public Utility Serv. Corp. v. Leggett & Platt, Inc.*, No. 08-1860, 2008 WL 4610241, at *3 (E.D. Pa. Oct. 16, 2008)). Plaintiff's breach of contract claims (Counts II, III, and V) should be evaluated by location of contract performance. See *ECF No.1* at ¶¶ 201, 203-207, 218-219. Throughout the course of employment, Plaintiff worked in the Minnesota office 12-16 hours a day except on Fridays when he flew back to Pennsylvania. *Id.* at ¶146. He became aware of the quality and compliance issues affecting his work while in the Minnesota facility. *Id.* at ¶¶75, 78-79. Concerns regarding these issues and the ability to execute on the job were raised at an in-person meeting in October 2024. *Id.* at ¶¶151, 159. Plaintiff's employment contract was ultimately terminated in Minnesota. *Id.* at ¶173; *ECF No.6* at 5. Thus, all claims involving breach of contract arose out of the District of Minnesota.

The fraudulent inducement, fraud, and negligent misrepresentation claims (Counts IV, VI, and VII) have some connection to Pennsylvania, as the recruitment and offer negotiations occurred remotely while Plaintiff resided here, and he accepted the offer from his home. *Id.* ¶¶ 26–33. Nonetheless, the employment that followed—and the injury alleged—centered in Minnesota. The interviews and conversations regarding Plaintiff's employment offer occurred remotely between Minnesota and Pennsylvania. *Id.*; *ECF No.6* at 4. Plaintiff signed the offer letter, which included details of compensation and opportunities for bonuses, from his home in Pennsylvania. *ECF No.1* at ¶¶20, 32. Despite the inter-state nature of these conversations, in accepting the resulting offer,

Dr. Arp availed himself of employment and its accompanying benefits in Minnesota where he began work on September 3, 2024. *Id.* at ¶37.

Claim I, violation of the Minnesota Whistleblower Act, arose primarily in Minnesota. Plaintiff observed quality and compliance issues in the production process at the Minnesota facility and made good-faith efforts to report issues during his employment there, including at his second in-person meeting with Mr. Sarami in October 2024. *ECF No.1* at ¶¶75, 78-79, 151, 159. Employment termination occurred in Minnesota that same month. *Id.* at ¶173.

Ultimately, the forum with the closer connection to the operative facts should prevail. See *Coppola v. Ferrellgas*, 250 F.R.D. 195, 200-201 (E.D. Pa. 2008) Although the Court acknowledges the deference owed to Plaintiff's choice of forum, a significant number of the operative facts and resulting claims arose in the District of Minnesota, weighing strongly in favor of transfer.

### C. Defendant's Forum Preference

Defendants' proposed forum generally carries less weight in a transfer inquiry as the purpose in granting a venue transfer must go beyond simply shifting inconvenience from one party to another. *EVCO Technology & Development Co., LLC v. Precision Shooting Equipment, Inc.*, 329 F.Supp.2d 728, 730 (E.D. Pa. 2005). Defendant's preferred forum is the District of Minnesota, weighing in favor of transfer. The proposed venue on its own does not tip the scales in favor of a transfer although considering where most of the claims arose signifies Defendant's request goes beyond mere inconvenience.

### D. Convenience of the Parties

Either party would be inconvenienced by additional costs and time burdens due to travel depending on the selected forum. Throughout the course of his employment with Bell Laboratories, Plaintiff traveled to Minnesota weekly, working in the office 12-16 hours a day

except on Fridays when he flew back to Pennsylvania. ECF No. 1 at ¶146. Considering Plaintiff previously undertook the burden of weekly travel to Defendant's facilities in the proposed forum, convenience of the parties is neutral, if not in favor of, transfer.

### E. Convenience of the Witnesses

Defendant employs more than 200 employees and maintains its principal place of business in Minnesota. ECF No. 1 at ¶¶12-13. The company does not maintain any offices, facilities, or employees in Pennsylvania. ECF No. 6 at 3 (citing Plies Cert at ¶ 5). Thus, those individuals Defendant references as likely witnesses—executives, supervisors and company personnel—live and work in Minnesota. *Id.* at 11. In contrast, Plaintiff is the only participant in the suit that resides in Pennsylvania. *Id.* This factor often carries more significance when parties have presented names and shown that such witnesses would be unavailable for trial. See *Automated Medical Products Corp. v. International Hosp. Supply Corp.*, Civ. No. 97-2328, 1998 WL 54351, at *6 (E.D.Pa. Jan. 30, 1998). Yet, a lack of identified witnesses does not disqualify considering convenience of witnesses in the request for transfer. The requirement to name witnesses can vary with the circumstances of each case, and "logical inferences may be drawn without the particularized information" if a rational basis for transferring exists. *Clay v. Overseas Carrier Corp.*, 61 F.R.D. 325, 331 (E.D. Pa. 1973). Plaintiff's claims against Defendant involving the nature of his contract negotiations, breach of contract, and retaliatory termination are likely to require that Defendant present witnesses employed by the company. Any witnesses called by Plaintiff would also likely be employed by or related to Bell Laboratories.

Plaintiff's claim under the Minnesota Whistleblower Act will necessarily require review of company records relating to the alleged compliance and quality issues, which he argues formed

the basis of his retaliatory termination. ECF No. 1 at ¶¶193-95. Bell Laboratories' company documents are all located in Minnesota. ECF No. 6 at 11.

Ultimately, convenience of the witnesses weighs in favor of transfer to the District of Minnesota.

### F. Public Interests

Public-interest considerations—particularly judicial economy and administrative efficiency—also favor transfer. Adjudicating all claims in one forum avoids duplicative litigation and inconsistent outcomes. See *Supco Auto. Parts, Inc. v. Triangle Auto Spring Co.*, 538 F. Supp. 1187, 1193 (E.D. Pa. 1982). Here, the Minnesota Whistleblower Act claim arose entirely in Minnesota, and the remaining claims stem from the same employment relationship. Trying related claims in separate districts would burden both courts and parties. The interests of justice are best served by transferring the entire case to the District of Minnesota, where all claims can be resolved together.

## IV. CONCLUSION

In sum, while Plaintiff's choice of forum is entitled to deference, the balance of private and public interest factors under *Jumara* weighs decisively in favor of transfer. The operative facts underlying most of Plaintiff's claims occurred in Minnesota, where Defendant is headquartered and the majority of witnesses and records are located. Litigating in that forum will promote convenience, efficiency, and the interests of justice by allowing all claims—statutory and common law—to be adjudicated together. Accordingly, the Court, in its discretion, will transfer this action to the United States District Court for the District of Minnesota pursuant to 28 U.S.C. § 1404(a).